ASSICURAZIONI GENERALI S.p.A.
and COMPANIA INTERNACIONAL
DE SEGUROS, S.A., as subrogees of
SKY SOLUTIONS (PANAMA) S.A. Y
AFILIADAS,

           Plaintiffs,

v.

FACEY COMMODITY COMPANY,
INC., a Florida corporation, GAP
FORWARDING, INC., a Florida
corporation, and FACEY
COMMODITY COMPANY, LTD., a
Jamaican company,

           Defendants.

_____/

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (D.E. 185), DENYING DEFENDANT GAP FORWARDING, INC.'S MOTION FOR SUMMARY JUDGMENT (D.E. 184), AND GRANTING DEFENDANTS FACEY COMMODITY COMPANY, INC. AND FACEY COMMODITY COMPANY, LTD.'S MOTION FOR SUMMARY JUDGMENT (D.E. 187)

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Summary Judgment

("Plaintiffs' Motion," D.E. 185) and Plaintiffs' Statement of Material Facts (D.E. 186), filed

on May 1, 2012. On May 15, 2012, Defendant Facey Commodity Company, Ltd. filed its

response ("Facey Ltd.'s Response," D.E. 197), to which Plaintiffs filed their reply

("Plaintiffs' Reply," D.E. 210) on May 24, 2012. Also before the Court are Defendant GAP

Forwarding, Inc.'s Motion for Summary Judgment ("Defendant GAP's Motion," D.E. 184)

and Defendant GAP Forwarding, Inc.'s Statement of Material Facts (D.E. 183), filed on May 1, 2012.  On May 25, 2012, Plaintiffs filed their response ("Plaintiffs' Response to GAP's Motion," D.E. 212), and no reply was filed.  Also before the Court are Defendants Facey Commodity Company, Inc. and Facey Commodity Company, Ltd.'s Motion for Summary Judgment ("Facey Inc. & Facey Ltd.'s Motion," D.E. 187) and Defendants Facey Commodity Company, Inc. and Facey Commodity Company, Ltd.'s Statement of Material Facts (D.E. 188), filed on May 1, 2012.  On May 18, 2012, Plaintiffs filed their response ("Plaintiffs' Response to Facey Inc. & Facey Ltd.'s Motion," D.E. 200), to which Defendants Facey Commodity Company, Inc. and Facey Commodity Company, Ltd. filed their reply ("Defendants' Reply," D.E. 214) on May 25, 2012.  Upon review of the Motions, Statements of Facts, Responses, Replies, and the record, the Court finds as follows.

## I.    Background[1]

Plaintiffs Assicurazioni Generali S.p.A. ("Assicurazioni"), an Italian company, and Compañía Internacional de Seguros, S.A. ("Compañía"), a Panamanian company, provided insurance for non-party Sky Solutions (Panama) S.A. y Afiliadas ("Sky Solutions").  Sky Solutions paid premiums to Plaintiffs pursuant to an insurance policy that covered telecommunications devices and equipment.  Defendant Facey Commodity Company, Ltd. ("Facey Ltd.") is a Jamaican limited liability company that owns and is the parent company of Sky Solutions, Defendant Facey Commodity Company, Inc. ("Facey Inc."), and Defendant

---

[1]    The facts contained in this section are taken from the Statements of Undisputed Material Facts (D.E. 183, 186, 188) and are undisputed unless otherwise noted.

GAP Forwarding, Inc. ("GAP"). Defendants Facey Inc. and GAP are Florida corporations. Defendant GAP is Facey Ltd.'s freight forwarding company and owns a warehouse in Doral, Florida. This Court has jurisdiction over the matter based on diversity of citizenship. See 28 U.S.C. § 1332.

This case involves claims resulting from the loss due to theft of telecommunications devices and equipment ("equipment") during transport. On December 12, 2008, Sky Solutions entered into a written contract[2] with Defendant Facey Ltd., whereby Sky Solutions agreed to pay Facey Ltd. a sum certain for the delivery of the equipment to destinations in Panama and Honduras within thirty days. The equipment was owned by Facey Ltd. and was stored at a warehouse owned and/or operated by Defendant GAP in Doral, Florida. GAP contracted with non-party Tony's Delivery, Inc. ("Tony's Delivery") to pick up the equipment from the warehouse, transport the equipment on a truck to the Miami International Airport, and deliver the equipment to non-party Arrow Air, Inc.[3] ("Arrow Air") for air transport to destinations in Panama and Honduras.

That same day, on December 12, 2008, Juan Olio ("Olio"), a driver employed by Tony's Delivery, picked up the equipment from GAP's warehouse and transported the equipment to the airport in a truck owned by Tony's Delivery. When Olio arrived at Arrow Air's loading bay at the airport, he parked the truck at the loading bay and went inside the

_____

[2]     The Parties agree that the contract was comprised of a series of commercial invoices that Plaintiffs attached to their Second Amended Complaint. (See D.E. 119-2.)

[3]     GAP also contracted with Arrow Air, Inc.

Arrow Air office to file paperwork. While parked at Arrow Air's loading bay at the airport, the truck, along with all of the equipment, was stolen.

Sky Solutions never received the equipment and filed an insurance claim with Plaintiffs to be reimbursed for the loss. On August 11, 2009, Plaintiffs Assicurazioni and Compañía collectively paid Sky Solutions $695,944.74 for the loss of the equipment, which amounts to the value of the equipment[4] plus freight and 10% as per the subject insurance policy. Each Plaintiff paid Sky Solutions fifty percent of the total loss (i.e., $347,972.37).

Plaintiffs' Second Amended Complaint (D.E. 119) alleged the following five counts: (1) equitable subrogation as to Sky Solutions' claim for breach of contract against Facey, Inc.; (2) equitable subrogation as to Sky Solutions' claim for breach of contract against Facey, Ltd.; (3) equitable subrogation as to Sky Solutions' claim for negligence against Facey, Ltd.; (4) equitable subrogation as to Sky Solutions' claim for negligent supervision against GAP; and (5) equitable subrogation as to Sky Solutions' claim for breach of implied bailment agreement against GAP. On May 21, 2012, the Court dismissed Counts III and V with prejudice (D.E. 205). Plaintiffs move for summary judgment on Count II (D.E. 185), Defendant GAP moves for summary judgment on Count IV[5] (D.E. 184), and Defendants Facey Inc. and Facey Ltd. move for summary judgment on Counts I and II (D.E. 187).

---

[4]      The value of the equipment alone is approximately $643,440.80.

[5]      Defendant GAP also moved for summary judgment on Count V (D.E. 184). Because the Court dismissed Count V with prejudice (D.E. 205), the Court need not address the Parties' arguments related to Count V.

## II.    Legal Standards

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotation omitted). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324; see also FED. R. CIV. P. 56(c). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Id. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.

III.    Discussion

   A.    Count I: Equitable Subrogation as to Sky Solutions' Claim for Breach of Contract Against Facey Inc.

In Count I of their Second Amended Complaint, Plaintiffs assert a claim of equitable subrogation as to Sky Solutions' claim for breach of contract against Facey Inc. Facey Inc. moves for summary judgment on this claim. Facey Inc. argues that because the Parties agree that there was no contract between Sky Solutions and Facey Inc., Facey Inc. cannot be liable for breach of contract and is thus entitled to summary judgment on this claim. (Facey Inc. & Facey Ltd.'s Motion 6.) Plaintiffs argue that "[t]he Commercial Invoices reference an entity by the name of 'Facey Commodity Co. Ltd. (MIA),' which has "commonalities to both

6

Facey Ltd[.] and Facey Inc.," such as a common address in Florida. (Plaintiffs' Response 2, 6.) Plaintiffs also assert that on July 8, 2010, Facey Inc. served responses to interrogatories, wherein representatives from Facey Inc. stated that the equipment was held at Facey Inc.'s location of storage and Facey Inc. generated the invoices. (Id. at 2-3.) Plaintiffs state, "It is Plaintiffs['] position that Sky Solutions purchased the goods from Facey Ltd[.], . . . but it is a genuine issue of material fact caused by [Facey Inc. and Facey Ltd.'s] own actions, practice, filings, corporate structure, and underlying business dealings relative to the subject goods that causes Plaintiffs to have to sue both Facey Inc[.] and Facey Ltd[.] for breach of contract as subsidiary and parent entities, respectively, based on the same Commercial Invoices." (Id. at 6.) Accordingly, Plaintiffs argue, the Court cannot grant summary judgment for Facey Inc. on Count I because "there remains a genuine issue of material fact as to the proper party in interest." (Id.)

"The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). The terms of a contract for the sale of goods may be encompassed in an invoice or a series of invoices. See Jarmco, Inc. v. Polyguard, Inc., 668 So. 2d 300, 304 n. 6 (Fla. 4th DCA 1996) (accepting that "[t]he contract between the distributor and the seller is in an invoice provided by the distributor"); see also Pellerito Foods, Inc. v. Am. Conveyors Corp., 542 So.2d 426, 427 (Fla. 3d DCA 1989) (stating that "[t]he contract consisted of a series of invoices"); Pestana v. Karinol Corp., 367 So. 2d 1096, 1098 (Fla. 3d DCA 1979)

7

(finding that a contract "embodied in a one page invoice written in Spanish and prepared by the defendant" to be enforceable); <u>Penrod Lumber Co. v. Great S. Wood Preserving, Inc.</u>, 2009 WL 5171759, at *2 (M.D. Fla. Dec. 23, 2009) (stating that the "invoices . . . comprise the only written indica of the parties' contract"). The Parties all agree that the underlying contract is comprised of the six commercial invoices dated December 12, 2008 pursuant to which Sky Solutions purchased the equipment from Facey Ltd. (<u>See</u> Second Amended Complaint Ex. B, D.E. 119-2, at 1-6.) Each of the six commercial invoices reference an entity by the name of "Facey Commodity Co. Ltd. (MIA)," and none of the commercial invoices reference an entity named Facey Commodity Co., Inc. (<u>Id.</u>) The Parties all agree that "Facey Commodity Co. Ltd. (MIA)" refers to Facey Ltd., not Facey Inc. (<u>See</u> Plaintiffs' Statement of Facts, D.E. 186, ¶ 10; Facey Inc. & Facey Ltd.'s Statement of Facts, D.E. 188, ¶ 1; GAP's Statement of Facts, D.E. 183 ¶ 2.) In Plaintiffs' own Statement of Facts, Plaintiffs acknowledge that "[o]n the commercial invoices, reference to Facey Commodity Company, Ltd. (MIA) is Facey Ltd." (Plaintiffs' Statement of Facts, D.E. 186, ¶ 10). In addition, the Parties all agree that Sky Solutions purchased the equipment from Facey Ltd. (<u>See</u> Plaintiffs' Statement of Facts, D.E. 186, ¶ 9; Facey Inc. & Facey Ltd.'s Statement of Facts, D.E. 188, ¶ 1; GAP's Statement of Facts, D.E. 183, ¶ 2.) In their Statement of Facts, Plaintiffs acknowledge that "Sky Solutions purchased the subject telecommunication devices and equipment from Facey Ltd." (Plaintiffs' Statement of Facts, D.E. 186, ¶ 9.)

"When a contract is clear and unambiguous, . . . the court cannot give it any meaning

beyond that expressed." <u>Bay Mgmt., Inc. v. Beau Monde, Inc.</u>, 366 So. 2d 788, 791 (Fla. 2d DCA 1978) (citing <u>Hamilton Constr. Co. v. Bd. of Pub. Instruction</u>, 65 So. 2d 729 (Fla. 1953)). Furthermore, "[p]arties' interpretations of their own contract will be followed unless contrary to law." <u>Scott v. Rolling Hills Place, Inc.</u>, 688 So. 2d 937, 939 (Fla. 5th DCA 1996) (citing <u>Welsh v. Carroll</u>, 378 So. 2d 1255, 1257 (Fla. 3d DCA 1979)). Because the contract itself references only "Facey Commodity Co. Ltd. (MIA)," which the Parties all agree is Facey Ltd., and because the Parties all agree that Sky Solutions purchased the equipment from Facey Ltd., the Court finds that there is nothing in the record to support Plaintiffs' claim for breach of contract against Facey Inc. <u>See</u> <u>Denney v. City of Albany</u>, 247 F.3d 1172, 1184 (11th Cir. 2001) (noting that the plaintiffs' admissions that defendant's statements of fact were true "flatly contradict[ed]" the plaintiffs' theory of the case and that the court could have "decide[d] the appeal on [that] basis alone"); <u>see also</u> <u>Jones v. Gerwens</u>, 874 F.2d 1534, 1537 n.3 (11th Cir. 1989) (treating a fact as conceded where the opposing party failed to controvert the fact as described in the movant's statement of undisputed material facts). Specifically, Plaintiffs have not pointed to anything in the record to show that Sky Solutions entered into a valid contract with Facey Inc., which is one of the elements for a breach of contract claim. <u>See</u> <u>Abbott Labs.</u>, 765 So. 2d at 740. Plaintiffs assert that Facey Ltd. and Facey Inc. shared an address in Florida at the time Facey Ltd. entered into the contract with Sky Solutions, that the equipment was held at Facey Inc.'s location of storage, and that Facey Inc. generated the invoices. (Plaintiffs' Response 5-6.) However, Plaintiffs have not cited

9

to any cases or provided any argument demonstrating how these alleged facts show that Facey Inc. entered into a valid contract with Sky Solutions. (See id.) Based on the admissions of all the Parties and the text of the invoices themselves, the Court finds that Sky Solutions did not enter into a contract with Facey Inc. to purchase the equipment. Accordingly, the Court finds that there is no genuine issue of material fact as to the breach of contract claim against Facey Inc., and Facey Inc. is thus entitled to summary judgment in its favor on Count I.

**B.     Count II: Equitable Subrogation as to Sky Solutions' Claim for Breach of Contract Against Facey Ltd.**

In Count II of their Second Amended Complaint, Plaintiffs assert a claim of equitable subrogation as to Sky Solutions' claim for breach of contract against Facey Ltd. Plaintiffs and Facey Ltd. cross-move for summary judgment on this claim. The Parties first dispute whether the contract is a shipment contract or a destination contract. Facey Ltd. asserts that the contract between Facey Ltd. and Sky Solutions is a shipment contract, (Facey Inc. & Facey Ltd.'s Motion 7-10), whereas Plaintiffs contend that the contract is a destination contract (Plaintiffs' Motion 7-9; Plaintiffs' Response to Facey Inc. & Facey Ltd.'s Motion 7-9).

"A shipment contract is considered the normal contract in which the seller is required to send the subject goods by carrier to the buyer but is not required to guarantee delivery thereof at a particular destination." Pestana, 367 So. 2d at 1099. "On a shipment contract, the risk of loss passes to the buyer when the goods sold are duly delivered to the carrier for

shipment to the buyer." Id. "A destination contract, on the other hand, is considered the variant contract in which the seller specifically agrees to deliver the goods sold to the buyer at a particular destination and to bear the risk of loss of the goods until tender of delivery." Id. "The risk of loss under such a contract passes to the buyer when the goods sold are duly tendered to the buyer at the place of destination while in the possession of the carrier so as to enable the buyer to take delivery." Id. "The parties must explicitly agree to a destination contract; otherwise the contract will be considered a shipment contract." Id.

The Parties all agree that the contract is comprised of the six commercial invoices dated December 12, 2008 pursuant to which Sky Solutions purchased the equipment from Facey Ltd. (See Second Amended Complaint Ex. B, D.E. 119-2, at 1-6.) Upon reviewing the invoices, the Court finds that the contract is a shipment contract. First, all six commercial invoices contain a "C&F" term. (See id.) "The term 'C. & F.' or 'C.F.' means that the price so includes cost and freight to the named destination." FLA. STAT. § 672.320(1). "A C.I.F. or C. & F. contract is a shipment contract." Ladex Corp. v. Transportes Aereos Nacionales, S.A., 476 So. 2d 763, 765 (Fla. 3d DCA 1985); see also U.C.C. § 2-320, cmt. n.1 (stating that "[t]he C.I.F.[6] contract is not a destination contract but a shipment contract").[7] Furthermore,

_____

[6] "The term 'C.I.F.' means that the price includes in a lump sum the cost of the goods and the insurance and freight to the named destination." FLA. STAT. § 672.320(1). "Unless otherwise agreed the term C. & F. or its equivalent has the same effect and imposes upon the seller the same obligations and risks as a C.I.F. term except the obligation as to insurance." FLA. STAT. § 672.320(3).

[7] Florida Statute Section 672.320 tracks the language of Section 2-230 of the Uniform Commercial Code.

the invoices do not contain any language in which Facey Ltd. specifically agreed to deliver the equipment sold to Sky Solutions at a particular destination and to bear the risk of loss of the equipment until tender of delivery. See Pestana, 367 So. 2d at 1099. Finally, Plaintiffs argue that the "SHIP TO" term on the invoices directing shipment of the equipment to locations in Panama or Honduras renders the contract a destination contract. Plaintiffs' argument is meritless because a "'ship to' term is a part of every contract involving the sale of goods where carriage is contemplated and has no significance in determining whether the contract is a shipment or destination contract for risk of loss purposes." Id. at 1100. Accordingly, because the invoices all contain the "C&F" term and the invoices do not contain any language showing the Parties' agreement to render the contract a destination contract, the Court concludes that the contract is a shipment contract and the risk of loss passed to Sky Solutions when the equipment was delivered to a carrier for shipment to Sky Solutions.

The Parties also dispute whether Facey Ltd. materially breached the contract. Facey Ltd. argues that the contract required it to deliver the goods to a carrier, and that it fulfilled its duties under the contract by delivering the equipment to Tony's Delivery, which is a carrier. (Facey Inc. & Facey Ltd.'s Motion 7-10.) Plaintiffs argue that Facey Ltd. breached the contract because shipment was required by an air carrier, not by a motor carrier, and the equipment was never delivered to Arrow Air. (Plaintiffs' Response to Facey Inc. & Facey Ltd.'s Motion 9-11.)

"Under a shipment contract, the seller, unless otherwise agreed, must . . . put the goods sold in the possession of a carrier and make a contract for their transportation as may be reasonable having regard for the nature of the goods and other attendant circumstances." Pestana, 367 So. 2d at 1099; see also FLA. STAT. § 672.320. The Parties agree that the equipment was stored at GAP's warehouse in Doral, Florida, which is not located at the airport. The Parties also agree that Tony's Delivery is a motor carrier that took possession of the equipment at GAP's warehouse and transported the equipment on a truck to Arrow Air's loading bay at the Miami International Airport. Accordingly, unless the invoices show that Sky Solutions and Facey Ltd. agreed to different terms, Facey Ltd. fulfilled its duties under the shipment contract and the risk of loss transferred to Sky Solutions when Facey Ltd. put the equipment the in the possession of Tony's Delivery, a motor carrier. Plaintiffs argue that Sky Solutions and Facey Ltd. modified the standard terms of a shipment contract and agreed that title and risk of loss would not pass from Facey Ltd. to Sky Solutions until Facey Ltd. delivered the goods to Arrow Air. In support of this argument, Plaintiffs note that the only specification in the contract regarding shipping was that the equipment be shipped "via Arrow Air."[8] (See Second Amended Complaint Ex. B, D.E. 119-2, at 1-6.) The Arrow Air waybills show that Facey Ltd. and Sky Solutions contemplated that the equipment would be shipped from Florida to locations in Panama and Honduras via air and using Arrow Air as the air carrier. (See Second Amended Complaint Ex. D, D.E. 119-4, at 1-2.) Thus, Facey

---

[8] The Parties agree that Sky Solutions did not provide any other shipping instructions to Facey Ltd., GAP, or Facey Inc.

13

Ltd. complied with the contract's only shipping instruction. The contract does not contain any terms related to shipment by motor carrier. However, because the equipment was stored at GAP's warehouse and not at Arrow Air's loading bay at the airport, the equipment had to be transported using a motor carrier to the airport. Accordingly, Sky Solutions and Facey Ltd. must have contemplated that the equipment would be transported to the airport using a motor carrier. See King v. Bray, 867 So. 2d 1224, 1227 (Fla. 5th DCA 2004) (where one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in a rational manner). Because the contract is silent as to shipment via a motor carrier, and the language that the equipment be shipped "via Arrow Air" is the only specification regarding shipping in the invoices, the Court looks to the gap-filling provisions of the Uniform Commercial Code, as set forth in the Florida Annotated Statutes, to determine the terms of the contract. See Penrod Lumber, 2009 WL 5171759, at *2 (stating that "because the invoices . . . comprise the only written indicia of the parties' contract, the UCC's gap-filling provisions will necessarily determine the terms of the parties' contract"). Under the gap-filling provisions of the Uniform Commercial Code, in a shipment contract, the seller has fulfilled its duties under a shipment contract by delivering the goods to a carrier. See FLA. STAT. ANN. § 672.320 (quoting U.C.C. § 2-320, cmt. n.1); see also Pestana, 367 So. 2d at 1099. Accordingly, because the contract is a shipment contract and because Facey Ltd. delivered the equipment to a carrier, the Court finds that Facey Ltd. did not materially breach the contract. Therefore, the Court finds that

there is no genuine issue of material fact as to the breach of contract claim against Facey

Ltd., and Facey Ltd. is thus entitled to summary judgment in its favor on Count II.

### C.   Count IV: Equitable Subrogation as to Sky Solutions' Claim for Negligent Supervision Against GAP

In Count IV of their Second Amended Complaint, Plaintiffs assert a claim of equitable

subrogation as to Sky Solutions' claim for negligent supervision against GAP.  Plaintiffs

contend that GAP is liable for negligently supervising the two independent contractors it

hired to deliver the equipment to Sky Solutions.  In its Motion for Summary Judgment, GAP

first argues that Plaintiffs have failed to meet the required elements under Florida law to

assert equitable subrogation.[9]

The Florida Supreme Court has defined subrogation as "the substitution of one person

---

[9]      The Parties appear to dispute whether Florida law or Panamanian law governs Plaintiffs' claim of equitable subrogation as to Sky Solutions' claim for negligent supervision against GAP.  A federal court sitting in diversity must apply the choice of law rules of the forum state.  Trumpet Vine Inv., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996).  Accordingly, Florida's choice of law rules govern this action.  In Florida, courts apply Florida's equitable subrogation principles, and instead perform the choice of law analysis on the subrogee's tort or contract claims against third parties.  See Lincoln Nat. Health & Cas. Ins. Co. v. Mitsubishi Motor Sales of Am., Inc., 666 So. 2d 159, 161-62 (Fla. 5th DCA 1995); see also Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc., 468 F.3d 1322, 1325 (11th Cir. 2006).  Plaintiffs assert a tort claim against GAP.  Florida has adopted the "significant relationships test" as the choice-of-law rule for torts.  See Bishop v. Florida Specialty Paint Co., 389 So. 2d 999, 1001 (Fla. 1980).  Under this test, the courts are to take into account the following four factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Id.  Taking these factors into account, and noting that the loss and all of the alleged actions leading to the loss occurred in Florida, the Court concludes that Florida law applies to the tort claim.  Accordingly, Panamanian law related to the elements of equitable subrogation is not applicable, and the Court finds that Florida law applies to the elements for equitable subrogation and the negligent supervision claim.

in the place of another with reference to a lawful claim or right." Dade Cnty. Sch. Bd. v.

Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999) (quoting W. Am. Ins. Co. v. Yellow

Cab Co., 495 So. 2d 204, 206 (Fla. 5th DCA 1986)).  Equitable subrogation, also referred to

as legal subrogation, "is not created by a contract, but by the legal consequences of the acts

and relationships of the parties."  Id.  Under Florida law,

> To maintain a claim based on equitable subrogation, [the plaintiff] must prove
> five elements: (1) that it made the payment at issue to protect its own interests,
> (2) the payment was non-voluntary, (3) it was not primarily liable for the debt
> paid, (4) it paid the entire debt, and (5) subrogation would not work any
> injustice to the rights of a third party.

Nova Info. Sys., Inc. v. Greenwich Ins. Co., 365 F.3d 996, 1005 (11th Cir. 2004) (citing

Dade Cnty. Sch. Bd., 731 So. 2d at 646)).  Because "[s]ubrogation 'is not allowed if it works

any injustice to the rights of others,' [a] party's entitlement to subrogation therefore 'depends

upon the equities and attending facts of each case.'"  Sherman v. Deutsche Bank Nat. Trust

Co., 2012 WL 3586613, at *2 (Fla. 3d DCA Aug. 22, 2012) (quoting Fed. Land Bank of

Columbia v. Godwin, 107 Fla. 537, 145 So. 883, 885 (1933); Nat'l Union Fire Ins. Co. v.

KPMG Peat Marwick, 742 So. 2d 328, 332 (Fla. 3d DCA 1999)) (citing Brannon v. Hills,

111 Fla. 491, 149 So. 556, 557 (1933); Eastern Nat'l Bank v. Glendale Fed. Sav. & Loan

Ass'n, 508 So. 2d 1323 (Fla. 3d DCA 1987)).

GAP first argues that because Plaintiffs did not receive a release from Sky Solutions

in favor of GAP, they have failed to establish that they are equitably subrogated.  (GAP's

Motion 3-5.)  For "tort cases, the party seeking subrogation must have obtained a release for

16

the other party responsible for the debt." State Farm Mut. Auto. Ins. Co. v. Johnson, 18 So.

3d 1099, 1101 (Fla. 2d DCA 2009) (citing Dade Cnty. Sch. Bd., 731 So. 2d at 647; Welch

v. Complete Care Corp., 818 So. 2d 645, 648 (Fla. 2d DCA 2002)).  Although the general

releases signed by Sky Solutions do not name any particular individual or corporation, both

releases specifically state that they transfer "all rights, titles and interests" in any claims

related to the loss of the equipment from Sky Solutions to Plaintiffs.  (See Second Amended

Complaint, Ex. A, at CM/ECF pp. 2, 3, 11, 14.)  Furthermore, GAP does not cite to, and the

Court has not found, any Florida state case that provides that a general release of all rights

in a claim is insufficient to allege equitable subrogation.  Accordingly, the Court finds that

GAP's argument that because the releases do not specifically reference GAP, Plaintiffs are

not equitably subrogated to Sky Solutions' claim, is meritless.

GAP also argues that under Florida law, it would be an injustice to allow Plaintiffs

to maintain suit against them because an insurance company may not subrogate against its

own insured.  In support of its argument, GAP asserts that the insurance policy under which

Plaintiffs made payment was issued to "Sky Solutions y Affiliadas," which translates to "Sky

Solutions and Affiliates."  GAP further asserts that because Facey Ltd. is the parent company

of Facey Inc., GAP, and Sky Solutions, Facey Ltd., Facey Inc., and GAP are all affiliated

with Sky Solutions.[10]  GAP concludes that because it is affiliated with Sky Solutions, and the

insurance policy for the equipment insured "Sky Solutions and Affiliates," it is covered under

---

[10]      Aside from asserting that Facey Ltd. is the parent company to both GAP and Sky
Solutions, GAP does not provide details regarding its affiliation with Sky Solutions.

the policy, and accordingly, Plaintiffs cannot subrogate against them.

An insurance company "may not maintain a subrogation action against its own insured, even if the insured's negligence caused the loss." State Farm Fla. Ins. Co. v. Loo, 27 So. 2d 747 (Fla. 3d DCA 2010) (citing Bulone v. United Servs. Auto. Ass'n, 660 So. 2d 399, 404 (Fla. 2d DCA 1995); Ray v. Earl, 277 So. 2d 73, 76 (Fla. 2d DCA 1973); Smith v. Ryan, 142 So. 2d 139, 141 (Fla. 2d DCA 1962)). The insurance policy named as the insured "Sky Solutions (Panama), S.A. y Afiliadas." (See Plaintiffs' Response to GAP's Motion, Ex. A, D.E. 212-1, at CM/ECF p. 7.) The insurance policy named the "affiliates" as "Sky Solutions de El Salvador, S.A. de C.V. y Sky Solutions de Honduras, S.A." (See id. at 9.) GAP is not mentioned in the policy. Accordingly, because the policy provided a specification for "affiliates" which did not include GAP, the Court concludes that GAP was not an insured under the terms of the policy. See Travelers Indem. Co. v. United States, 543 F.2d 71, 74 (9th Cir. 1976) (stating that a "maxim of [contract] interpretation . . . is that a third party who is not a party to the contract is not usually entitled to a strict construction in his favor in determining whether the contract was made for his benefit" (citing Milchem, Inc. v. M. A. Smith Well Serv., Inc., 351 F. Supp. 1307 (E.D. La. 1972)). GAP's broader argument is that because it is affiliated with Sky Solutions, it would be an injustice to allow Plaintiffs to pursue an equitable subrogation claim against GAP. However, GAP does not cite to, and the Court has not found, any Florida state case that provides that an insurer cannot assert an equitable subrogation claim against an affiliate of its insured. Accordingly,

because there is not contrary case law, and because "Florida courts are 'committed to a liberal application of the rule of equitable subrogation,'" Lincoln Nat. Health & Cas. Ins. Co. v. Mitsubishi Motor Sales of Am., Inc., 778 So. 2d 392, 394 n.2 (Fla. 5th DCA 2001) (quoting Dantzler Lumber & Export Co. v. Columbia Cas. Co., 156 So. 116, 120 (Fla. 1934)), the Court concludes that GAP's motion for summary judgment based on the elements of equitable subrogation must be denied.

In addition, GAP argues that it is entitled to summary judgment on this claim because Plaintiffs have failed to prove the elements of negligent supervision. Specifically, GAP argues that it did not breach any duty of care owed to Sky Solutions and that there is no evidence to show that Tony's Delivery was the proximate cause of the loss.[11] (GAP's Motion 7-10.) Plaintiffs argue that GAP owed a duty "as a shipper and warehouseman under Florida law" to Sky Solutions to safeguard the equipment and ensure delivery by air transport, and that GAP failed in this duty by hiring independent contractors with inadequate security. (Plaintiffs' Response 13-20.) GAP did not file a reply in support of its Motion.

"Generally, the employer of an independent contractor is not liable for the negligence of the independent contractor because the employer has no control over the manner in which the work is done." Suarez v. Gonzalez, 820 So. 2d 342, 344 (Fla. 4th DCA 2002) (citing 2A Fla. Jur.2d Agency & Employment § 138 (1998); St. Johns & Halifax R.R. Co. v. Shalley,

---

[11] The Court notes that in its brief GAP set forth legal standards for a claim of negligent selection (see GAP's Motion 7-8), whereas Count IV of Plaintiffs Second Amended Complaint sets forth a claim of negligent supervision against GAP (see Second Amended Complaint ¶¶ 57-69).

33 Fla. 397 (1894); <u>Singer v. Star</u>, 510 So. 2d 637, 639-40 (Fla. 4th DCA 1987)). "However, 'the general rule is riddled with exceptions.'" <u>Id.</u> (quoting <u>City of Coral Gables v. Prats</u>, 502 So. 2d 969, 971 (Fla. 3d DCA 1987)). "One such exception is where the employer is negligent 'in selecting, instructing, or supervising the contractor.'" <u>Id.</u> (quoting <u>McCall v. Alabama Bruno's, Inc.</u>, 647 So.2d 175, 177 (Fla. 1st DCA 1994)) (citing Restatement (Second) Of Torts §§ 409, 411 (1965); W. Page Keeton et al., <u>Prosser & Keeton on the Law of Torts</u> § 71 at 510 (5th ed. 1984)). "To state a cause of action for negligent supervision . . . under Florida law the claimant must allege: (1) the existence of a relationship giving rise to a legal duty to supervise; (2) negligent breach of that duty; and (3) proximate causation of injury by virtue of the breach." <u>Albra v. City of Fort Lauderdale</u>, 232 F. App'x 885, 888 (11ths Cir. 2007) (citing <u>Roberson v. Duval Cnty. Sch. Bd.</u>, 618 So.2d 360, 362 (Fla. 1st DCA 1993)); <u>see also</u> <u>Malicki v. Doe</u>, 814 So. 2d 347, 361 (Fla. 2002). "Liability for negligent supervision . . . occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as 'investigating, discharge or reassignment.'" <u>Malicki</u>, 814 So. 2d at 362 n.15 (quoting <u>Garcia v. Duffy</u>, 492 So. 2d 435, 438-39 (Fla. 2d DCA 1986)). Under Florida law, "liability attaches when an employer (1) knows or should know about the offending employee's unfitness and (2) fails to take appropriate action." <u>Martinez v. Pavex Corp.</u>, 422 F. Supp. 2d 1284, 1298 (M.D. Fla. 2006) (citing <u>Garcia</u>, 492 So. 2d at 438-39).

The Court finds that summary judgment on this negligent supervision claim would be

inappropriate because Plaintiffs have presented some evidence on the elements of negligent supervision. Plaintiffs have presented evidence that GAP hired Tony's Delivery to deliver the equipment to Arrow Air and that GAP contracted with both Tony's Delivery and Arrow Air to deliver the equipment to Sky Solutions. Plaintiffs cite to deposition testimony and expert reports for their argument that GAP knew or should have known that Tony's Delivery required supervision. (See Plaintiffs' Response to GAP's Motion 17-19.) In particular, Plaintiffs assert that prior to and on the day of the loss, Tony's Delivery had failed to follow GAP's instruction to not leave the truck unattended, and that the equipment was stolen when the truck was unattended. (See id. at 18.) Plaintiffs also cite to a deposition of GAP's warehouse manager, who stated that he trained individuals from Tony's Delivery on security procedures, which included instructing drivers to always "be looking at the truck so that it shouldn't be parked unattended." (See id. at 18 n. 15; see also Errol Campbell Dep., D.E. 212-4, at 43:18-20.) Plaintiffs cite to deposition testimony from the Tony's Delivery driver that the truck was left unattended when it was stolen with the equipment inside. (See Plaintiffs' Response to GAP's Motion 18 n. 15; see also Juan Olio Dep.; D.E. 183-1, at 22-24.) With regard to Arrow Air, Plaintiffs cite to an expert report, in which GAP's expert witness opined that security measures at Arrow Air's loading bay were "inadequate," including the lack of security guards and "uncontrolled and unrestricted ingress and egress on the property and into the warehouse delivery area." (Plaintiffs' Response to GAP's Motion 18 n. 16; see also Al Ortenzo Expert Report, D.E. 212-7, at 2.) Accordingly, the

Court finds that there are material issues of fact as to Plaintiff's claim of equitable subrogation as to Sky Solutions' claim for negligent supervision against GAP, and thus summary judgment for GAP is denied on this claim.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Plaintiffs' Motion for Summary Judgment (D.E. 185), filed on May 1, 2012, is **DENIED**;

2. Defendant GAP Forwarding, Inc.'s Motion for Summary Judgment (D.E. 184), filed on May 1, 2012 is **DENIED**; and

3. Defendants Facey Commodity Company, Inc. and Facey Commodity Company, Ltd.'s Motion for Summary Judgment (D.E. 187), filed on May 1, 2012, is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of September, 2012.

*Joan A. Lenard*

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**